UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DIKSHIT SHARMA § § Plaintiff § § v. § § § Civil Action No. _____ § EMERSON PROCESS MANAGEMENT § LLLP, a limited liability limited § partnership, Emerson FZE, a foreign § corporation, ROYAL DUTCH SHELL PLC,§ a foreign corporation, and SHELL IRAQ § PETROLEUM DEVELOPMENT B.V. § § Defendants § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Dikshit Sharma ("Sharma") alleges the following against Emerson Process Management LLLP ("Emerson Process"), a Delaware limited liability limited partnership, Emerson FZE, a foreign corporation, Royal Dutch Shell PLC ("Royal"), a foreign corporation, and Shell Iraq Petroleum Development B.V. ("Shell Iraq"):

**Parties**

1. Sharma is a foreign individual that should be reached through his attorney of record, Tej R. Paranjpe, of Paranjpe & Mahadass LLP, located at 3701 Kirby Drive, Suite 530, Houston, Texas 77098.

2. Emerson Process is a limited liability limited partnership registered in Texas, whose registered agent's address is 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201, or wherever else it may be found.

3. Emerson FZE is a foreign corporation whose United States domestic address is 8100 W. Florissant Avenue, Saint Louis, MO 63136, or wherever else it may be found.

4. Royal is a foreign corporation headquartered in The Hague, Netherlands at Carel van Bylandtlaan 16, 2596 HR The Hague, The Netherlands. Royal may be served pursuant to Federal Rule 4(f)(1), through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. The Central Authority contact is Miss S. Sambo, De Officier van Justitie, Postbus 20302, 2500 EH THE HAGUE, Netherlands. Service of process will then occur pursuant to Art. 5(1)(2) of the Hague Convention of November 15, 1965 on the Service Abroad of Judicial and Extrajudicial Documents.

5. Shell Iraq is a foreign corporation that is registered and headquartered in The Hague, Netherlands at Carel Van Bylandtlaan 30, 2596 HR The Hague, The Netherlands. Shell Iraq may be served pursuant to Federal Rule 4(f)(1), through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. The Central Authority contact is Miss S. Sambo, De Officier van Justitie, Postbus 20302, 2500 EH THE HAGUE, Netherlands. Service of process will then occur pursuant to Art. 5(1)(2) of the Hague Convention of November 15, 1965 on the Service Abroad of Judicial and Extrajudicial Documents.

**Jurisdiction & Venue**

Diversity Jurisdiction

6. The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(2) because Sharma is an appropriate plaintiff, a citizen of a foreign state, and Emerson Process is a citizen of the United States of America, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

Alter-ego Jurisdiction

7. The Fifth Circuit has found that the "alter ego doctrine permits the imposition of liability upon the parent company for torts and contractual obligations of its subsidiary…" *Miles v. Am. Telephone & Telegraph Co.,* 703 F.2d 193, 195 (5th Cir. 1983). The theory "provides a vehicle for bringing a subsidiary within the reach of the Texas long-arm statute because a close relationship between a parent and its subsidiary may justify a finding that the parent does business in a jurisdiction through the local activities of its subsidiaries, or vice versa." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Circ. 1983); *Walker v. Newgent* 583 F.2d 163, 167 (5th Cir. 1978). The Fifth Circuit has employed a multi-factor test to determine if companies are truly individual: whether (1) distinct and adequately capitalized financial units are incorporated and maintained; (2) daily operations of the two corporations are separate; (3) formal barriers between management of the two entities are erected, with each functioning in its own best interest; and (4) those with whom the corporations come in contact are apprised of their separate identity… (5) common stock ownership; (6) the method and degree of financing of the subsidiary by the parent; (7) common directors or officers; (8) separate books and accounts; (9) common business departments; (10) extent to which contracts between parent and subsidiary favor one over the other; and (11) connection of parent's employee, officer or director to subsidiary's tort or contract giving rise to suit." *Hargrave* 710 F.2d at 1162-63.

8. Emerson FZE, Emerson Process' subsidiary, has a separate corporate status that is formal in name only without any semblance of individual identity, and its business is that of Emerson Process, which is staffing and managing personnel. Emerson Process has offices located in Houston, Harris County, Texas. Emerson Process and Emerson FZE do not satisfy the first 5

cited elements, which therein help establish that the companies are alter-egos of each other. Emerson Process and Emerson FZE do, however, satisfy the latter 6 elements which additionally establishes alter-ego jurisdiction. Emerson Process provides staffing and management of product/services to third parties. Emerson Process' subsidiaries solely enable Emerson Process to provide their products and services in foreign markets. Emerson Process and Emerson FZE even exchange and share managerial/supervising personnel such as Navin E. Rajashekar ("Rajashekar"). Rajashekar, for example, has worked in Emerson Process' Texas offices as well as Emerson FZE with Lifecycle Services Sales & Operations. Rajashekar is the individual that communicated directly with Sharma regarding the incident. Emerson Process and Emerson FZE shall hereinafter be collectively referred to as "Emerson".

9. Shell Iraq, Royal's subsidiary, has a corporate status, that is formal in name only, without any semblance of individual identity. The relationship between Royal and Shell Iraq also satisfies the Fifth Circuit's factor test in favor of finding that Shell Iraq and Royal are alter egos of each other. Shell Iraq is merely a departmental branch of Royal. Shell Iraq has even provided that their registered address is Carel Van Bylandtlaan 30, The Hague, 2596 HR, Netherlands, which is also Royal's address. In 2010, The Iraqi Ministry of Oil has entered into a twenty (20) year contract with Royal, appointing Royal as the lead operator of the Majnoon Oil Field. Royal created Shell Iraq to operate in Iraq as an additional branch of Royal. Sharma's incident took place on the Majnoon Oil field, operated and managed by Shell Iraq and Royal. Shell Iraq and Royal shall hereinafter be collectively referred to as "Shell".

Supplemental Jurisdiction

10. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Sharma's claims against Shell because Sharma's claims are so related to the claims against Emerson, which are within the Court's original jurisdiction. Sharma's claims against Shell are so related that they form part of the same case or controversy under Article 3 of the United States Constitution.

Venue

11. Venue is proper in this district under 28 U.S.C. §1391(b)(1) because Emerson does business in this district and resides in this state.

12. This venue is an adequate alternative forum for Shell, as opposed to falling within jurisdiction of the United Arab Emirates. Under the venue in this Court, all the parties will be treated fairly and will not be deprived of any remedies, as Sharma would likely be in Iraq or the United Arab Emirates. *Sydow v. Acheson & Co.* 81 F.Supp. 2d 758, 768 (S.D. Tex. 2000). Currently, neither Iraq nor the United Arab Emirates retain a formal service of process procedure. Further, from an equitable stance, this venue is the only venue that can provide Sharma any appropriate remedy, as policy suggests that Sharma would only be able to recover under a single legal theory and would be estopped from recovery of wages and future damages.

**Conditions Precedent**

13. All conditions precedent have been performed or have occurred as required.

**Facts**

14. Sharma is a foreign individual who contracted to work with Emerson, as a Service Engineer, on location in Basra, Iraq. Sharma accepted his contract on May 16, 2013.  His contract

stated that his working day rate would be $700 per day and his site allowance day rate would be an additional $500 per day. Thus, his total compensation was $1200 per day.

15. On or around August 2013, Emerson engaged with Shell, to provide staffing services to their Majnoon Oil Field in Iraq ("Majnoon"). While on site at Majnoon, Shell required all workers to wear safety equipment due to the foreseeable and potential dangers Shell knew existed because of the very nature of the environment and working conditions. Further, Shell designed and provided covers for the Storm Water Pits throughout Majnoon in order to prevent foreseeable injuries of workers falling into the storm water pits.

16. On or about August 19, 2013, Sharma was walking across a covered storm water pit when the cover suddenly gave way, causing Sharma to fall into a pit approximately 3.5 meters (12 feet) below. Sharma suffered a fracture of his medial malleolus and a spiral fracture of his fibula. The injuries required Sharma to undergo extensive surgery and he was unable to work for over half a year (a total of 238 days of which at least 175 were working days).

17. Following the accident, the Defendants investigated the circumstances leading to Sharma's fall and injuries. The Defendants' findings were documented in an Incident Investigation Report. Pursuant to the Incident Investigation Report, it was definitively determined that Sharma was not at fault in the accident. **The Incident Investigation Report concluded that numerous deficiencies in the Storm Water Pit designs, execution, and placements throughout Majnoon were the proximate causes of Sharma's injuries.** Specifically, the Incident Investigation Report revealed that: Shell's designs of their Storm Water Pits were not in line with industry standards, Shell's quality and care assurance did not perform dimensional checks, and the covers of the Storm Water Pits were not tagged or identified.

18. These deficiencies are of crucial significance, as outlined in the Incident Investigation Report. Specifically, "each of the 12 pits are unique in dimensions and no 2 pits have the same 'length'". The varying dimensions of the pits resulted in 17 different types of pit covers with drastic differences in length and width.  According to the Incident Report the pit cover designs chosen by Shell were "not a typical design one would expect when many covers need to be fabricated to fit in-situ made concrete pits…. the choice of having different dimensions for each pit eliminates the advantages of prefabrication of formwork instigating **a higher likelihood that dimensional inaccuracies, errors occur . . .** The facts that all covers are different in dimension **increases the likelihood that the manufacturer makes covers that do not match the requirements**. **Further, multiple cover sizes make site installation and supervision more difficult increasing the risk of error**." (Incident Investigation Report, emphasis added).

19. Shell merely needed to reduce the number of variances to "a few standard sizes" and then the supervisors could have "detect[ed] mistakes easier as they do not always need to revert back to a drawing to find the custom dimensions for a particular pit." According to the Incident Investigation report, **Sharma's injuries would not have occurred had Shell followed industry standards in the construction, design, and supervision of their pit covers.**

20. Sharma was rendered unable to work until approximately March 28, 2014, a total of 221 days (155 working days) following the accident. Sharma was not paid or reimbursed by Emerson or Shell for his time or lost wages from August 19, 2013 through March 28, 2014.  On November 21, 2013, during the period that Sharma was not being paid or reimbursed, Emerson extended Sharma's contract until July 1, 2014.

21. Since Sharma was not working or being paid, he was required to travel to India and stay with family. The duration of time Sharma resided in India, because of the accident, caused Sharma to be subjected to India's residential taxes of approximately $40,000 USD.   If not for the accident, and not being paid, Sharma ordinarily would not have been residing in India due to his occupation, and therefore would not have been subject to India's residential tax.

## Breach of Contract

22. Emerson is liable for breaching its contract with Sharma.

23. A breach of contract action must be proven by showing: (1) there was a valid, enforceable contract; (2) plaintiff is a proper party to sue for the breach; (3) plaintiff performed, tendered performance of, or was excused from performing its contractual obligations; (4) the defendant breached the contract; and (5) the defendant's breach caused the plaintiff injury.

24. Sharma held a valid, enforceable, written contract with Emerson. Emerson did not appropriately compensate Sharma for the injuries he incurred while in the course and scope of his employment with Emerson. Even after the accident, Emerson sought to extend its contract with Sharma through July 1, 2014. However, Emerson did not provide compensation for Sharma for the nearly eight (8) months he was unable to work due to the injuries he suffered in the course and scope of his employment.

25. Emerson's breach caused Sharma to sustain lost of wages, for 155 working days, which he was entitled to earn through the contract he signed with Emerson.

## Promissory Estoppel

26. Pleading alternatively, the Defendants are liable to Sharma under the theory of promissory estoppel.

27. A promissory estoppel claim is proven by establishing the following: (1) the defendant made a promise to the plaintiff; (2) the plaintiff reasonably and substantially relied on the promise to his detriment; (3) the plaintiff's reliance was foreseeable by the defendant; and (4) injustice can be avoided only by enforcing the defendant's promise.

28. The Defendants' compensation policies for contractors injured on the job were relied upon by Sharma, to Sharma's detriment. Sharma's reliance was foreseeable by the Defendants. Sharma experienced a loss of wages as a result of his reliance on the Defendants to compensate him for his lost time. Injustice can be avoided only by enforcing the Defendants promise and to fully compensate Sharma for his lost time.

## Negligence

29. A claim for negligence can be established by proving: (1) Shell owed Sharma a duty; (2) Shell breached that duty; and (3) the breach proximately caused Sharma's injury.

30. Shell owed Sharma, as an invitee and worker on its premises, a duty to provide a safe working place and environment. Shell breached that duty by installing deficient Storm Water Pits and covers throughout their Majnoon Oil Field. The deficient pit and cover designs proximately caused Sharma's injury.

## Premises Liability

31. Sharma was an invitee on Shell's premises at the time of his injury. Shell owns a license to manage all operations at Majnoon, retaining and exercising control over the premises at the time Sharma was injured.

32. Shell had a duty to use ordinary care to keep the premises in a reasonably safe condition, and to protect Sharma from unreasonable risks of harm.

33. A dangerous condition and/or dangerous activity, which posed an unreasonable risk of harm, existed on the premises of Majnoon. Shell had knowledge of the Storm Water Pits and covers they provided, and that there existed an unreasonable risk of harm. Nonetheless, Shell failed to reasonably secure or properly design Storm Water Pits and covers.

34. Shell's breach proximately caused Sharma's injuries and damages.

## Damages

35. As a direct and proximate result of Emerson and Shell's actions, Sharma suffered the following damages:

    a. Loss of wages and compensation between August 19, 2013 and March 28, 2014;

    b. Reasonable expenses in reliance on Emerson's contract with Sharma;

    c. Actual damages of $40,000.00 that Sharma is liable to the Government of India because Emerson refused to pay Sharma, which required his return to India;

    d. Physical pain and mental anguish sustained in the past by Sharma;

    e. Physical pain and mental anguish that, in reasonable probability, Sharma will sustain in the future;

    f. Physical impairment sustained in the past by Sharma;

    g. Physical impairment that, in reasonable probability, Sharma will sustain in the future; and

    h. Medical expenses incurred by Sharma in the past, present, and future.

## Jury Demand

36. In accordance with Federal Rule of Civil Procedure 38, Sharma demands a trial by jury on all the causes of action stated herein.

**Prayer**

37. For these reasons, Sharma asks for judgment against Emerson and Shell for the following:

   a. Loss of wages and compensation between August 19, 2013 and March 28, 2014;

   b. Reasonable expenses in reliance on Emerson's contract with Sharma;

   c. Actual damages of $40,000.00 that Sharma is liable to the Government of India because of Sharma's injury, because of Emerson's refusal to pay Sharma which caused his return to India and his subjection to a residential tax he would not have otherwise been responsible for;

   d. Physical pain and mental anguish sustained in the past by Sharma;

   e. Physical pain and mental anguish that, in reasonable probability, Sharma will sustain in the future;

   f. Physical impairment sustained in the past by Sharma;

   g. Physical impairment that, in reasonable probability, Sharma will sustain in the future;

   h. Medical expenses incurred by Sharma in the past, present, and future;

   i. Incidental expenses;

   j. Exemplary damages;

   k. Pre-judgment interest at the maximum legal rate per annum until paid;

   l. Post-judgment interest at the maximum legal rate per annum until paid;

   m. Attorney's fees;

   n. Costs of suit;

   o. Such other and further relief, both general and special, at law or in equity, to which Sharma may show himself justly entitled.

        Respectfully submitted by,

        Paranjpe & Mahadass LLP

        /s/ Tej R. Paranjpe_____
        Tej R. Paranjpe
        SBN: 24071829
        Southern District: 1682215
        3701 Kirby Drive, Suite 530
        Houston, TX 77098
        TParanjpe@pandmllp.com
        Tel.:   832-667-7700
        Fax:   832-202-2018
        Attorney in charge for Plaintiff